[No. S109902. Aug. 7, 2003.]

In re EDDIE M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
EDDIE M., Defendant and Appellant.

484

**COUNSEL**

Allen G. Weinberg, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka,

Assistant Attorney General, Carl N. Henry, Juliet H. Swoboda, Michael C. Keller, Jamie L. Fuster, Donald E. De Nicola and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—At the March 7, 2000, Primary Election, California voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998 (Proposition 21). Proposition 21 operated, among other things, to amend juvenile court procedures, including Welfare and Institutions Code section 777.[1] As configured since 1986, section 777 allowed a more restrictive disposition for a person who, while already on juvenile probation for a criminal offense adjudicated under section 602, violated that probation by committing new misconduct.

As pertinent here, Proposition 21 revised section 777 in two respects. First, before Proposition 21, the prosecutor could "allege[ ] a violation of a condition of probation amounting to a crime," and either the probation officer or the prosecutor could "*allege[ ] a violation of a condition of probation not amounting to a crime.*" (§ 777, former subd. (a)(2), as amended by Stats. 1986, ch. 757, § 5, p. 2478, italics added (former section 777(a)(2)).) Proposition 21 deleted the initial nonitalicized phrase from section 777, subdivision (a)(2) (section 777(a)(2)).

Second, before Proposition 21, the reasonable doubt standard governed all section 777(a)(2) proceedings, whether or not a crime was charged therein. (See *In re Arthur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345] (*Arthur N.*); Cal. Rules of Court, former rule 1392(d)(1), adopted eff. July 1, 1977, relettered subd. (e)(1) eff. Jan. 1, 1987, and repealed eff. July 1, 1989.)[2] The current statute, which only covers probation violations "*not* amounting to . . . crime[s]" (§ 777(a)(2), italics added), allows proof "by a preponderance of the evidence" (*id.*, subd. (c)).

Here, the new version of section 777 was used to place Eddie M. (petitioner), then on juvenile probation for a prior criminal adjudication, in a more restrictive setting. The section 777 motion claimed, and the juvenile court found, several probation violations. No breach of any penal law was averred or sustained in the section 777 proceeding. No request or ruling was

---

[1] All unlabeled statutory references are to the Welfare and Institutions Code.

[2] All unlabeled rule references are to the California Rules of Court.

made to confine petitioner beyond the maximum term for his prior section 602 offense (see §§ 726, 731).

Relying on *In re Marcus A.* (2001) 91 Cal.App.4th 423 [109 Cal.Rptr.2d 919] (*Marcus A.*), petitioner contends that the "not amounting to a crime" language in current section 777(a)(2) limits that section to probation violations objectively lacking the elements of crimes. He claims that to the extent his probation violations could be charged as crimes, Proposition 21 bars section 777's use, and relegates modification of his dispositional status to either a new section 602 proceeding or an adult criminal prosecution—each requiring proof beyond a reasonable doubt. Petitioner also contends the preponderance standard of proof authorized by section 777, subdivision (c) (section 777(c)) offends federal due process guarantees.

The Court of Appeal correctly rejected petitioner's approach. ██ In our view, the statute's language and long history make clear that an "allege[d]" probation violation "not amounting to a crime" covers *any* act *alleged* only as a probation violation. (§ 777(a)(2).) By limiting the statute to probation violations not amounting to crimes, Proposition 21 simply ended prosecutorial use of section 777(a)(2) to seek new *criminal adjudications* against criminal juvenile probationers. Proposition 21 also relaxed certain procedures attending this prior practice. The new streamlined statute follows adult probation revocation procedures (see Pen. Code, § 1203.2) by preserving executive discretion to seek a dispositional change for a criminal juvenile probationer who violates probation, regardless of the actual criminal nature of the violation alleged, without proving any crime beyond a reasonable doubt, so long as any resulting physical confinement does not exceed the maximum term of adult confinement tied to the original offense. The juvenile court also retains authority under section 777 to enforce its orders, including orders barring new crimes, against criminal probationers. Moreover, because both juvenile and adult probation violation proceedings differ from criminal prosecutions in purpose, operation, and effect, juvenile probation violations, like their adult counterparts, can constitutionally be proven under section 777(c) by a preponderance standard insufficient for conviction of a charged crime. Hence, we affirm the Court of Appeal's judgment.

## I. STATUTORY BACKGROUND

Section 602 extends juvenile court jurisdiction to persons who are under 18 years of age when they violate any law "defining crime." (*Id.*, subd. (a); cf. § 601 [incorrigible youths].) A person found to satisfy section 602 comes under the dispositional jurisdiction of the court. (*Id.*, subd. (a).) Such

jurisdiction often ends when the ward attains age 21, but a higher age limit sometimes applies. (§ 607.)[3]

Probation officials investigate and refer juvenile criminal offenders to the prosecuting attorney. (E.g., §§ 652, 653.5.) No section 602 case begins until the prosecutor files a petition under that statute on the People's behalf. (§§ 650, subd. (c), 681, subd. (a).) The petition states which penal laws were violated and whether the offenses are felonies or misdemeanors. (§§ 656, subd. (f), 656.1.)

The hearing is "bifurcated." (*In re Gladys R.* (1970) 1 Cal.3d 855, 859 [83 Cal.Rptr. 671, 464 P.2d 127].) At the jurisdictional phase, the juvenile court decides whether the petition concerns a person described in section 602. The Evidence Code applies. (§ 701.) Under section 701, the petition cannot be sustained absent "[p]roof beyond a reasonable doubt supported by evidence [ ] legally admissible in the trial of criminal cases." The court must declare whether the offense is a felony or misdemeanor. (§ 702; *In re Manzy W.* (1997) 14 Cal.4th 1199, 1203–1204 [60 Cal.Rptr.2d 889, 930 P.2d 1255].)

Section 701's high standard of proof at the jurisdictional phase was added in response to *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] (*Winship*). (*In re Manuel L.* (1994) 7 Cal.4th 229, 235 [27 Cal.Rptr.2d 2, 865 P.2d 718], citing Stats. 1971, ch. 934, § 1, p. 1833.) The high court held that federal due process requires proof beyond a reasonable doubt when juveniles are charged with crimes. (*Winship, supra*, 397 U.S. at p. 368.) This rule applies at the jurisdictional stage of a criminal delinquency proceeding. (*Ibid.*)

Less exacting rules govern disposition. No statute expressly subjects this phase to the Evidence Code. In addition to other relevant evidence (e.g., §§ 656.2, subd. (a), 725.5), the court must consider the probation officer's report. (§ 706; *In re Gladys R., supra*, 1 Cal.3d 855, 859; see *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843–1845 [40 Cal.Rptr.2d 85] [holding § 706 implicitly incorporates Evid. Code, § 352].)

One outcome in section 602 cases is probation, which involves various forms of community release. (*In re Kazuo G.* (1994) 22 Cal.App.4th 1, 8 [27 Cal.Rptr.2d 155].) Like other juvenile sanctions, probation guides reform,

---

[3] Of course, not all section 602 offenders are fit for juvenile court treatment. Proposition 21 broadened the circumstances under which some violent and serious juvenile crimes are prosecuted in adult court without a prior finding of unfitness in juvenile court. (E.g., §§ 602, subd. (b) [minors who "shall" be charged in criminal court], 707, subd. (d)(1)–(3) [minors who "may" be charged in criminal court]; see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 549–550 [117 Cal.Rptr.2d 168, 41 P.3d 3] (*Manduley*).

promotes accountability, and protects the public. (§ 202, subds. (b) & (e)(3).) Some conditions are dictated by statute. (E.g., §§ 729–729.3.) Others are discretionary. (See § 730, subd. (b).)

Persons placed on juvenile probation for a criminal offense adjudicated under section 602 may, or may not, also be made wards of the court. A wardship declaration is required if a section 602 criminal probationer is removed from the physical custody of a parent or guardian. (See §§ 725, 726, 727, 730.)

For section 602 wards, an "additional alternative" to probation is commitment to a county home, ranch, or camp. (§ 730, subd. (a).) The most restrictive placement is the California Youth Authority (CYA). (See §§ 731, 734.)

The court must find that CYA would likely benefit the ward (§ 734), and that it otherwise serves the statutory aims. (*In re Ricky H.* (1981) 30 Cal.3d 176, 184 [178 Cal.Rptr. 324, 636 P.2d 13] (*Ricky H.*).) Nothing bars CYA for section 602 wards who have received no other placement. (*Ricky H., supra,* at p. 183; see *In re John H.* (1978) 21 Cal.3d 18, 27 [145 Cal.Rptr. 357, 577 P.2d 177].)

However, any order removing a section 602 ward from the custody of a parent or guardian must state, among other things, that "physical confinement" cannot exceed "the maximum term of imprisonment which could be imposed upon an adult convicted of the [same] offense or offenses." (§ 726, subd. (c), 1st par.; see § 731, 2d par.) This rule took effect January 1, 1977. (Stats. 1976, ch. 1071, § 29, p. 4827; see *id.,* § 30, p. 4829.) It seeks to prevent any unconstitutional disparity between the maximum confinements of juveniles and adults for both a first offense (see *People v. Olivas* (1976) 17 Cal.3d 236, 242–243, 257 [131 Cal.Rptr. 55, 551 P.2d 375]) and any subsequent offense (see *Arthur N., supra,* 16 Cal.3d 226, 238–239).

In late 1977, a ward's "maximum" confinement on a single count was defined as the upper term prescribed under the Determinate Sentencing Act (DSA) (see Pen. Code, § 1170), plus enhancements. (§ 726, subd. (c), 2d par., added by Stats. 1977, ch. 1238, § 1, p. 4158, eff. Oct. 1, 1977.)[4] The same

---

[4] The maximum period of confinement is statutorily defined as "the longest of the three time periods set forth in *paragraph* (2) *of subdivision* (a) of Section 1170 of the Penal Code." (§ 726, subd. (c), 2d par., italics added.) However, long after it appeared in section 726, the italicized DSA provision was redesignated *subdivision* (a)(3) of Penal Code section 1170. (Stats. 1995, ch. 49, § 1, p. 124.) No conforming change was made in section 726—an oversight the Legislature may now wish to address. If a section 602 ward is found to have committed "a misdemeanor or a felony not included within the scope of [the DSA under]

1977 law allowed courts to "aggregate" terms of confinement for multiple section 602 counts or petitions, including previously sustained petitions. (§ 726, subd. (c), 3d par.) Aggregation follows the DSA formula for consecutive sentences, including enhancements. (See *In re Jovan B.* (1993) 6 Cal.4th 801, 810, 812, 818 [863 P.2d 673].)

Section 777—the statute at issue here—has long allowed the juvenile court to modify disposition by ordering a more restrictive placement for a person previously found to have committed a criminal offense under section 602. (*In re Ronald E.* (1977) 19 Cal.3d 315, 326 [137 Cal.Rptr. 781, 562 P.2d 684].) Between section 777's enactment in 1961, and Proposition 21's approval in 2000, the statute contemplated a "supplemental petition" alleging that the prior disposition was not "effective" in reforming or protecting the section 602 ward or probationer. (Former § 777(a)(2).)

The section 777 "supplemental petition" came to be used in a wide range of situations against persons who were already section 602 wards and probationers. In some cases, the section 777 petition simply alleged a probation violation or other state of facts warranting a change in the disposition currently in effect for the prior offense. In other cases, new crimes were charged *as such*, producing consequences similar to those attending a *new section 602* petition.

In 1976, *Arthur N.* held that where section 777 was used to allege a new crime against a section 602 ward or probationer, the due process rule in *Winship, supra*, 397 U.S. 358, applied, and the supplemental petition must be sustained beyond a reasonable doubt. (*Arthur N., supra*, 16 Cal.3d 226, 239–240.) *Arthur N.* (*id.* at pp. 235–239), declined to analogize section 777 "new crime" proceedings to adult probation revocation proceedings involving a lower standard of proof. Finding no distinction between original (§ 602) and supplemental (§ 777) petitions alleging new crimes, *Arthur N., supra*, 16 Cal.3d at page 240, further held that "the bifurcated hearing procedure" established for section 602 proceedings applied in section 777 "new crime" proceedings as well.

Effective July 1, 1977, the Judicial Council adopted new Juvenile Court Rules, including former rule 1392(d)(1). This provision subjected all section 777 jurisdictional hearings to the same procedures as section 602 jurisdictional hearings, including section 701's requirement of proof beyond a reasonable doubt supported by evidence admissible in criminal trials. The Advisory Committee comment explained that former rule 1392(d)(1) "extend[ed]" the reasonable doubt requirement to supplemental petitions

---

Section 1170 of the Penal Code, the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law." (§ 726, subd. (c), 4th par.)

which did not "charge[ ] new and different crim[es]," and for which such a standard was not strictly "required" by *Arthur N., supra,* 16 Cal.3d 226. (Advisory Com. com., Deerings Ann. Codes, Rules (1980 ed.) foll. rule 1392, p. 423; see *In re Antonio A.* (1990) 225 Cal.App.3d 700, 705 [275 Cal.Rptr. 482] [applying same hearsay rules at § 602 and 777 jurisdictional phases].)[5]

A few years later, this court clarified in *In re Michael B.* (1980) 28 Cal.3d 548 [169 Cal.Rptr. 723, 620 P.2d 173], that section 777 was not the sole means of charging new crimes against persons already under section 602 jurisdiction. The alternatives were to file either a new section 602 petition or a "unitary" petition under both sections 602 and 777. (*In re Michael B., supra,* 28 Cal.3d at pp. 553, 554.) *In re Michael B.* held, however, that due process required notice of any intent to rely on previously sustained petitions, or, by charging new crimes, to aggregate and extend the maximum term of confinement. (*Ibid.*)

Against this backdrop, the Legislature enacted the California Juvenile Probation Revocation Procedural Act of 1986 (the 1986 Act). (Stats. 1986, ch. 757, §§ 1, 5, pp. 2476, 2478.) This measure amended section 777(a)(2) to indicate that, with respect to section 602 wards and probationers, supplemental petitions applied to "[probation] violations," and it also ended prosecutorial control over supplemental proceedings in such cases. (See § 777, former subd. (a), as amended by Stats. 1977, ch. 1241, § 9, p. 4184.) The 1986 Act gave prosecutors authority to file any supplemental petition "alleg[ing]" a probation violation "amounting to a crime." (Former § 777(a)(2).) The 1986 Act also allowed either the probation officer or the prosecutor to file a supplemental petition "*alleg[ing]*" a probation violation "*not amounting to a crime.*" (*Ibid.,* italics added.)[6]

---

[5] The comment to former rule 1392(d)(1) provided, in part, as follows: "[A]s now required *in certain instances* [under *Arthur N., supra,* 16 Cal.3d 226], subdivision (d) prescribes that a two-part hearing be held on the supplemental petition, analogous to the jurisdiction and disposition hearings held on the original petition. This is required by [*Arthur N.*] *in those cases where the supplementary petition charges new and different criminal acts not included in the original petition* . . . . This rule would *extend 'the same panoply of . . . protections' to all hearings on supplemental petitions* . . . . [R]equirements relating to the appointment of counsel [citations], the rules of evidence [citations] and *the burden of proof* [citations] are made applicable to hearings on a supplemental petition." (Advisory Com. com., Deerings Ann. Codes, Rules, *supra,* p. 423, italics added.) The apparent purpose of this expansive approach was to promote uniformity and clarify the applicable standard of proof. (See rule 1400(b).)

[6] The version of section 777 in effect when Proposition 21 became law provided, in part, as follows: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition. [¶] (a) The supplemental petition shall be filed as follows: [¶] . . . [¶] (2) By the probation officer or the prosecuting

In 2000, Proposition 21 changed the scope of section 777 in section 602 cases. As pertinent here, voters deleted the provision allowing prosecutors to allege probation violations amounting to crimes. Now, for wards or probationers under section 602, section 777 applies in only one instance traceable to the 1986 Act—a probation violation "not amounting to a crime." (§ 777(a)(2).)

With respect to procedural changes, Proposition 21 replaced the supplemental petition with a "notice" provision. (§ 777, subds. (a)(2) & (b).) A "preponderance of the evidence" standard now applies. (§ 777(c).) Other new language allows "reliable hearsay evidence" insofar as it would be "admissible in an adult probation revocation hearing [under] *People v. Brown* [(1989) 215 Cal.App.3d 452 [263 Cal.Rptr. 391] (*Brown*)] and any other relevant provision of law." (§ 777(c).)[7]

## II. FACTS

On October 18, 2000, petitioner was arrested for being under the influence of narcotics in public. He admitted ingesting methamphetamine, and the drug was found on his person. Petitioner, who turned age 18 on October 30, 2000, was a juvenile court ward, and was home on probation for a prior section 602 offense.

---

attorney, after consulting with the probation officer, if the minor is a court ward or probationer under Section 602 in the original matter and the supplemental petition alleges a violation of a condition of probation not amounting to a crime. The petition shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor. The petition shall be filed by the prosecuting attorney, after consulting with the probation officer, if a minor has been declared a ward or probationer under Section 602 in the original matter and the petition alleges a violation of a condition of probation amounting to a crime. The petition shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." (Stats. 1989, ch. 1117, § 18, p. 4127.)

[7] Section 777 as amended by Proposition 21 provides, in part, as follows: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after a noticed hearing. [¶] (a) The notice shall be made as follows: [¶] . . . [¶] (2) By the probation officer or the prosecuting attorney if the minor is a court ward or probationer under Section 602 in the original matter and the notice alleges a violation of a condition of probation not amounting to a crime. The notice shall contain a concise statement of facts sufficient to support this conclusion. [¶] . . . [¶] (c) The facts alleged in the notice shall be established by a preponderance of the evidence at a hearing to change, modify, or set aside a previous order. The court may admit and consider reliable hearsay evidence at the hearing to the same extent that such evidence would be admissible in an adult probation revocation hearing, pursuant to the decision in [*Brown, supra*, 215 Cal.App.3d 452] and any other relevant provision of law."

On October 19, 2000, the district attorney filed a new section 602 petition alleging that petitioner possessed a controlled substance, a felony (Health & Saf. Code, § 11377, subd. (a)), and was under the influence of a controlled substance, a misdemeanor (*id.*, § 11550, subd. (a)). At the jurisdictional hearing on November 14, 2000, petitioner admitted both offenses, and the court sustained the petition. The dispositional hearing occurred immediately thereafter. Based on the probation report, the court knew about petitioner's gang affiliation, his prior juvenile crimes starting at age 12 (e.g., battery, grand theft, giving false information to police), and his two prior camp community placements. However, the court rejected the recommendation of CYA.

The court continued petitioner's wardship under section 602, removed him from parental custody, and ordered him committed to a camp community program for one year. The court continued petitioner's probation under conditions named and numbered in its order. Petitioner's maximum term of confinement for the two drug offenses was three years four months.

On May 3, 2001, five months after petitioner arrived at Camp Resnick, the probation department moved under section 777 to terminate the placement and to commit petitioner to CYA. The motion, which bore the same docket number as the section 602 drug case, alleged that petitioner had violated probation on six different occasions. All six counts involved both condition No. 1 (obey all laws), and condition No. 2 (follow staff instructions). Count 5 also implicated condition No. 7 (do not leave camp without permission).

The section 777 hearing occurred June 20, 2001. At the jurisdictional phase, counts 1 and 4 were dismissed at the People's request. Camp employees and petitioner testified about the four other matters, as follows:

Count 2 occurred December 23, 2000. Petitioner disrupted shower time by refusing to exchange his dirty county sweatshirt for a clean one, claiming it was his own property. Staff retrieved the item and sent petitioner to the Special Housing Unit (SHU) as discipline. Petitioner said he viewed staff's request as equivocal. He felt he did not need a new sweatshirt.

Count 3 occurred March 23, 2001, when petitioner caused a disturbance by refusing to stop reading at bedtime. He was sent to SHU. Petitioner said he meant no harm because others were still awake and he was not sleepy.

Count 5 occurred April 21, 2001, after family visitation in the camp gym. Violating staff instructions, petitioner left the supervised setting of the gym and escorted his family to the exit gate. He was stopped and sent to SHU. Petitioner denied any intent to defy orders or leave camp.

Count 6 occurred April 26, 2001. Petitioner initially refused to shave, as camp rules required. Once petitioner started shaving, he stopped midway and asked to see family pictures mailed to him at camp. After a one-hour standoff, staff sent petitioner to SHU. On the way, he entered a restricted area and opened staff's mailbox in order to retrieve the pictures. A staff member confronted petitioner. When petitioner refused to move or leave, several employees carried him away. Petitioner claimed that shaving harmed his skin, and that he thought he was allowed to enter the restricted area.[8]

The People argued that petitioner's misconduct, though seemingly innocuous, disrupted camp routines, encouraged peer disobedience, and threatened staff control. Invoking section 777 as amended by Proposition 21, the People claimed all four counts were supported by a preponderance of the evidence. The juvenile court agreed and sustained the allegations.

At disposition, a camp probation officer testified that petitioner defied authority in order to assert his manhood, and that other wards, most of whom were younger, viewed him as a leader. The witness opined that only CYA, which offered more structure and better counseling, could control petitioner.

Over counsel's objection, the juvenile court found that petitioner would likely benefit from CYA, rejected all other alternatives, and otherwise adopted the recommended disposition. The court noted that despite his desire to be treated as an adult, petitioner misbehaved at camp and committed crimes on probation at home. Petitioner was committed to CYA for the three-year four-month maximum term of confinement attending his section 602 drug offenses, less certain credits.

Petitioner appealed, urging that because several of his probation violations were criminal in nature, they could not be treated under section 777, and, in any event, they had to be proved beyond a reasonable doubt. For this proposition, he cited *Marcus A., supra*, 91 Cal.App.4th 423 .

A divided Court of Appeal disagreed with *Marcus A., supra*, 91 Cal.App.4th 423, and held that, as a general rule, Proposition 21 does not exclude inherently criminal acts under section 777(a)(2), provided they are

---

[8] Here, as on appeal, though he declines to admit any misconduct, petitioner artfully suggests that the above described acts, if they occurred as found in the section 777 proceeding, constitute crimes in the following respects: Count 2 involves theft of a sweatshirt under Penal Code section 484, subdivision (a); count 5 involves attempted escape under Welfare and Institutions Code section 871, subdivision (a); and count 6 involves resisting a peace officer and/or an executive officer in violation of Penal Code section 148, subdivision (a)(1) and section 69, respectively. Petitioner does not claim that the conduct alleged and found in count 3 violates any penal law.

alleged only as probation violations.[9] The Court of Appeal majority determined that Proposition 21 sought to harmonize section 777 with adult probation revocation proceedings, and "thereby complet[ed] the process begun by the Legislature in 1986." The majority also determined that because no new criminal charge or longer term of confinement is involved, section 777, like the adult scheme, is not unconstitutional insofar as it employs a preponderance standard of proof. In a separate concurring opinion, one justice accepted petitioner's claim of statutory error, but opined that the requisite facts had been proven beyond a reasonable doubt in any event.[10]

Petitioner sought review, challenging the Court of Appeal's decision on both statutory and constitutional grounds. We address both issues.

## III. DISCUSSION

### A. *Meaning of Section 777.*

Like the court in *Marcus A., supra*, 91 Cal.App.4th 423, petitioner insists that section 777(a)(2) has always concerned the nature of the underlying conduct (criminal versus noncriminal) rather than the manner in which the state alleges and treats it (new crime versus probation violation). Under this view, section 777(a)(2)'s limited application to probation violations "not amounting to . . . crime[s]" excludes acts that constitute crimes, even though they may also violate probation. Petitioner repeats his appellate claim that, except for the bedtime reading incident in count 3, his probation violations involved criminal conduct and thus cannot be used to modify his placement under section 777.[11]

---

[9] Without providing any supporting analysis, the Court of Appeal majority qualified its holding by inserting the following sentence in a footnote: "If the *only* condition of probation that the juvenile has violated is that he or she 'obey all laws,' a new petition under section 602, not notice of a section 777 hearing, must be used to seek a more restrictive placement based on the subsequent misconduct amounting to a crime." As we shall explain, there is no statutory support for such an exception to the general rule otherwise affirmed here. Both before and after Proposition 21, an "allege[d]" probation violation "not amounting to a crime" means any act alleged under section 777(a)(2) as a mere probation violation, *including* criminal conduct that violates a requirement to obey all laws.

[10] In a part of the majority analysis with which the concurrence tacitly agreed, the Court of Appeal held that the juvenile court miscalculated the maximum term of confinement for the section 602 drug offenses (and thus the maximum term for which petitioner could be confined at CYA for his probation violations) by including consecutive terms for the felony and misdemeanor offenses, and by not staying sentence on the latter count. Neither party criticizes the Court of Appeal for modifying the disposition by subtracting four months from the maximum term of confinement. The issue is not reviewed here.

[11] Apparently, because no appellate decision had yet addressed the issue, petitioner did not argue in the *juvenile* court that Proposition 21 excluded criminal conduct from section 777. Nor did the Attorney General initially claim that petitioner's silence waived the issue on

Contrary to what petitioner claims, the plain meaning of the statute does not support his approach. (See *People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912] [plain meaning controls].) No literal reference to behavior—criminal or noncriminal—has ever appeared in section 777(a)(2).

Indeed, in 1986, when section 777(a)(2) was first amended to describe probation violations based on whether they amounted to crimes, lawmakers knew how to define "acts" and the "commission" or "perpetration" of conduct as criminal or not. (E.g., Pen. Code, §§ 15 [defining "crime" as an "act committed or omitted" in violation of penal law], 136, subd. (3) [defining "victim" as person against whom crime is "perpetrated"].) Then, as now, the Legislature used similar language to characterize section 602 in neighboring sections of the Welfare and Institutions Code. (E.g., §§ 656.2, subd. (a), 676.5, subd. (a) [§ 602 involves "commission" of criminal offenses].)

By contrast, when the Legislature amended section 777(a)(2) in 1986, it made no direct reference to the "commission" or "perpetration" of "acts" or "conduct" that violated a criminal law. Instead, the 1986 Act emphasized the phrase "[probation] violation," then simply qualified *that* term based on whether the *violation "amount[ed]* to a crime." (Former § 777(a)(2), italics added.) Because the Legislature presumably knew how to draft statutes that targeted criminal *acts* or *conduct,* as such (see *People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078]), we can reasonably infer that its failure to include such language in former section 777(a)(2) was intentional. (See, e.g., *People v. Martinez* (1995) 11 Cal.4th 434, 451 [45 Cal.Rptr.2d 905, 903 P.2d 1037].) Thus, the phrase "not amounting to a crime," as used in the 1986 Act, evidently involved something *other than* the inherent criminal nature of the probation violation that triggered a request for a dispositional modification.

Under the same settled rules of construction, voters who approved Proposition 21 in 2000 also knew that section 777(a)(2) was not phrased in the manner petitioner suggests when they amended that section. ▮ If Proposition 21 had intended section 777(a)(2) to apply to the "commission" of

---

appeal. After soliciting supplemental briefs from the parties, the Court of Appeal concluded that the statutory and constitutional issues raised by petitioner should be decided notwithstanding any procedural bar that might otherwise apply. Under the circumstances, we agree. Review was granted in this case to decide the meaning and validity of section 777 in countless section 602 cases involving probation violations covered by Proposition 21. The lower courts are divided on the issue. As the Attorney General seems to concede, a decision on the merits here is necessary to resolve the conflict as soon as possible.

"conduct" or the "perpetration" of "acts" that are inherently criminal, such language, modeled on similar neighboring statutes, could have been included in the initiative measure.

Moreover, petitioner's reading of the current version of section 777(a)(2) would treat as mere surplusage other language that the 1986 Act added and that Proposition 21 retained. (See *People v. Hicks* (1993) 6 Cal.4th 784, 794 [25 Cal.Rptr.2d 469, 863 P.2d 714].) ■ Under that language, the modification request must "*allege*[ ]" a probation violation "not amounting to a crime." (§ 777(a)(2), italics added.) According to both legal and nonlegal dictionaries, the verb "allege" means to "plead" or "charge" matters having legal significance, or to "accuse" or "indict" someone in court. (E.g., Roget's Internat. Thesaurus (6th ed. 2001) p. 440, col. 2; American Heritage Dict. (4th ed. 2000) p. 46, col. 1; 1 Oxford English Dict. (2d ed. 1989) p. 331, col. 3; West's Legal Thesaurus/Dict. (special deluxe ed. 1986) p. 42; Ballentine's Law Dict. (3d ed. 1969) p. 61, col. 2; Webster's 3d New Internat. Dict. (1965) p. 55, col. 2; see Burton, Legal Thesaurus (2d ed. 1992) p. 21, col. 2 ["alleged" means "asserted formally"].) This feature alone suggests that lawmakers and voters focused on how the authorities choose to treat—i.e., to "allege[ ]"—new misconduct, rather than on the inherent criminal nature of those acts.

■ By further stating that what must be "allege[d]" is a "*violation of a condition of probation* not amounting to a crime," the Legislature and voters emphasized the nature of the legal pleadings and court proceedings. (§ 777(a)(2), italics added.) Again, this language suggests that whether the statute applies rests on official discretion to *plead* new misconduct, even if inherently criminal, as a mere probation violation, and to forgo treating the act as a new crime.

Decisional law and practice guides shed little light on the "not amounting to a crime" concept. Between 1986 and 2000, the courts largely assumed that because section 777(a)(2) embraced any alleged probation violation whether or not it was inherently criminal, no misconduct escaped the statute's reach. (E.g., *In re Marco A.* (1996) 50 Cal.App.4th 1516, 1521 [58 Cal.Rptr.2d 540] [probation violation for being AWOL from county facility amounts to crime depending on how alleged]; see 1 Waxman, Cal. Juvenile Court Practice (Cont.Ed.Bar 1998 supp.) § 11.41, pp. 234–235.)

Serious debate over the meaning of section 777(a)(2) arose only after Proposition 21 deleted the reference to alleged probation violations "amounting to . . . crime[s]." In *Marcus A., supra,* 91 Cal.App.4th 423, 427, the court summarily concluded that this change removed all criminal acts from section 777, and that the minor's illegal possession of cigarettes had been wrongly

pled as a probation violation. However, the instant Court of Appeal basically rejected this approach and viewed the statute as excluding criminal *counts*, not criminal conduct.

Much like the present Court of Appeal, we do not read current section 777(a)(2) in the manner petitioner suggests. Absent any express limitation on the nature of the underlying act, and given the allusion to official charging discretion, the statute seems to cover any probation violation alleged in the section 777 notice, whether or not that act could otherwise be pled as a crime. Nevertheless, to confirm this view, we examine petitioner's arguments in light of the statute's long history. (See *People v. Wutzke* (2002) 28 Cal.4th 923, 935 [123 Cal.Rptr.2d 447, 51 P.3d 310].)

Notably, petitioner avoids discussing the 1986 Act, which added the disputed language to section 777. But as indicated above, we assume voters were aware of the meaning and purpose of this amendment. The history of the 1986 Act shows that the phrase "not amounting to a crime" allows probation violation proceedings even where the acts could otherwise be charged as crimes.

At the 1985–1986 Regular Session, Assemblywoman Mojonnier introduced Assembly Bill No. 3769 which, as amended, revised section 777.[12] As pertinent here, the bill originally divided authority to file section 777(a)(2) supplemental petitions between the prosecuting attorney and the probation officer, respectively, based on whether the section 602 ward or probationer was, or was not, "in custody." (Assem. Bill No. 3769 (1985–1986 Reg. Sess.) as introduced Feb. 21, 1986.) The same version of the bill also proposed amending section 653.5 to require the prosecutor to decide within five days of referral whether to invoke section 602 or section 777 in out-of-custody cases—steps that only prosecutors could take under then existing law. (Assem. Bill No. 3769 (1985–1986 Reg. Sess.) as introduced Feb. 21, 1986.)

The original bill arose from legislative concerns that prosecutors were overburdened with case referrals involving persons who were already under juvenile court jurisdiction as the result of prior section 602 adjudications, but were not in custody, and who committed new misconduct. Delays in charging new crimes and probation violations, it was believed, impaired juvenile court treatment and threatened public safety. By requiring prosecutors to quickly

---

[12] Both the original and amended versions of the bill, and the bill digest, were drafted by the State Coalition of Probation Organizations (SCOPO). Legislative reports prepared in conjunction with Assembly Bill No. 3769 both allude and adhere to SCOPO documents explaining the measure. Indeed, there is virtually no substantive difference between legislative and SCOPO summaries of the bill. State archive materials for Assembly Bill No. 3769 include the SCOPO documents.

decide in such cases whether to file a new section 602 petition, or instead a supplemental petition under section 777, and by otherwise allowing probation officials to initiate section 777 proceedings, lawmakers sought to expedite the processing of section 777 matters involving "further law or probation violations." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 3769 (1985–1986 Reg. Sess.) as introduced Feb. 21, 1986, p. 1.) In this regard, the bill was explicitly modeled on Penal Code section 1203.2, which allows probation officers to initiate revocation proceedings against adults for *any* probation violation, including the commission of new crimes. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 3769 (1985–1986 Reg. Sess.) as amended Apr. 8, 1986, p. 3.)[13]

Without repudiating these aims, the Legislature revised Assembly Bill No. 3769 only once, in the Assembly, to delete language allocating section 777 filing authority based on the offender's custodial status. Under the amended bill, which later became the 1986 Act, section 777 could be invoked by either probation officers or prosecutors when the petition "allege[d]" a probation violation "not amounting to a crime," but only by prosecutors when the petition "allege[d]" a violation "amounting to a crime." (Assem. Bill No. 3769 (1985–1986 Reg. Sess.) as amended Apr. 8, 1986.)

The final version of Assembly Bill No. 3769 resulted from concerns that the prior draft had inadvertently limited prosecutorial discretion to allege new criminal offenses under section 777. It became clear that if the bill did not grant prosecutors express authority to file supplemental petitions involving probation violations alleged as new crimes, probation officers would control "all out of custody 777 petitions, including those 777 petitions that *state that the violation of the court order is a law violation.*" (SCOPO, letter to Assemblywoman Mojonnier, Mar. 28, 1986, italics added.) To prevent encroachment onto the People's exclusive authority to "state" (or allege) a "law violation" (or crime), the "not amounting to a crime" language was used to describe the section 777 petitions that both probation officers and prosecutors could file. Lawmakers assumed such matters would often involve noncriminal conduct. However, consistent with the express intent to follow the adult

---

[13] Penal Code section 1203.2 remains largely unchanged since it appeared in materials related to Assembly Bill No. 3769 and the 1986 Act. Penal Code section 1203.2, subdivision (a) states, in part: "[T]he court may revoke and terminate . . . probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person *has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses.*" (Italics added.) Subdivision (b) of Penal Code section 1203.2 states, in part: "Upon its own motion or *upon the petition of the . . . probation officer or the district attorney . . .* , the court may modify, revoke, or terminate the probation of the probationer pursuant to this subdivision." (Italics added.)

model, no such legal requirement was imposed. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3769 (1985–1986 Reg. Sess.) as amended Apr. 8, 1986, pp. 2–5; Assem. Com. on Public Safety, Analysis of Assem. Bill No. 3769 (1985–1986 Reg. Sess.) as amended Apr. 8, 1986, pp. 1–3.)

Thus, insofar as the 1986 Act gave both probation officers and prosecutors authority to "allege[ ]" probation violations "not amounting to . . . crime[s]," section 777(a)(2)—like Penal Code section 1203.2—covers both criminal and noncriminal acts. Only by allowing officials to initiate and expedite section 777 proceedings in the widest range of cases could juvenile "standards of accountability [follow] those in existence for adult probationers." (Legis. Counsel's Dig., Assem. Bill No. 3769 (1985–1986 Reg. Sess.) 2 Stats. 1986, p. 2476.)

To defeat this view, petitioner invokes portions of Proposition 21 itself that do not directly address section 777. He observes that in these other sections, the initiative both permits and requires the People to file *certain* criminal charges in adult court without a prior judicial finding of unfitness in juvenile court. Petitioner also observes that the initiative enhances the punishment of *certain* juvenile crimes. We are therefore asked to infer that the voters, in amending section 777(a)(2) to omit probation violations alleged as crimes, intended *all* new crimes committed by persons already under section 602 jurisdiction to trigger the maximum punishment, and to limit the prosecutor's discretion to treat such conduct as mere probation violations affecting only the nature of the juvenile placement for the original crime. Under this view, new criminal conduct must be treated either as a section 602 offense (which can *lengthen* the maximum term of juvenile confinement), or as an adult crime (which can trigger a state prison term). Since petitioner was over the age of 18 when he violated probation, he implies that only the latter option is available here. (See § 602, subd. (a).)

We reject this analysis. Whatever limits Proposition 21 places on prosecutorial discretion to allege juvenile criminal conduct in a particular forum or proceeding, the initiative measure does so only with respect to certain violent and serious felonies, and felonies committed under certain aggravating circumstances. (E.g., §§ 602, subd. (b), 707, subd. (d); see *Manduley, supra,* 27 Cal.4th 537, 549–550.) ■ As petitioner suggests, no statute added or revised by Proposition 21 requires *all* criminal acts to be charged as substantive crimes in either juvenile or adult court, or otherwise alters the People's traditional role in deciding how to treat most offenses. Nor, as we have seen, does section 777(a)(2) expressly or implicitly ban criminal acts as probation violations. If Proposition 21 had made such a "drastic" change in section 777, and had excluded *all* section 602 wards and probationers who criminally reoffend, voters "would have expressed this intent more clearly in

the statute itself." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 572 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)

In a related vein, petitioner insists that his approach honors certain declarations in the ballot pamphlet. He notes that Proposition 21 protects the public from "*the most violent juvenile criminals and gang offenders,*" such as "RAPISTS AND MURDERERS." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) argument in favor of Prop. 21, p. 48.) Insofar as voters viewed the juvenile law as "DANGEROUSLY LENIENT" for some criminal acts, petitioner implies the initiative withdraws section 777 in all such cases. (Ballot Pamp., *supra*, argument in favor of Prop. 21, p 48.)

Petitioner oversimplifies the express purpose of Proposition 21, particularly with respect to statutory amendments affecting juvenile court procedures like section 777. Notwithstanding the clear intent to impose the full range of adult penalties on juveniles who commit the worst crimes, voters disclaimed any intent to "*incarcerate kids for minor offenses.*" (Ballot Pamp., *supra*, argument in favor of Prop. 21, p. 48.) The measure itself explained that "less serious offenders" remain eligible for treatment under the juvenile scheme, including "burglars, car thieves, and first time non-violent felons who have potential for rehabilitation." (Ballot Pamp., *supra*, text of Prop. 21, p. 119.) Overall, changes to the Welfare and Institutions Code reportedly stressed "rehabilitative protocols over incarceration" and greater "accountability" for all juvenile offenders. (*Ibid.*)

Applying these principles, we start from the premise that many probation violations, including those that could be charged as crimes, do not involve violent or serious felonies of the kind targeted for adult treatment and harsh punishment under Proposition 21. As petitioner concedes in his briefs in this court, there is no guarantee that the People can prove beyond a reasonable doubt—in either a section 602 proceeding or an adult criminal prosecution—all or even most conduct that violates both the criminal law and juvenile probation. (See § 701; Pen. Code, § 1096.) Here, the prosecutor implied at the section 777 hearing that petitioner's outbursts at camp could realistically be treated only as probation violations warranting a new juvenile placement. Petitioner agrees, noting that "[n]one of these offenses were [*sic*] so grave that it cannot be said that [criminal] prosecution might have been rejected."

Under such circumstances, if the prosecutor concludes in the lawful exercise of his discretion to forgo criminal charges in juvenile or adult court, and if section 777 is unavailable as a matter of law, reoffense by a section 602 ward and probationer would entail no specific statutory sanction. Such a potentially wide gap in the law would impair the ability of both the executive and judicial branches to guide youthful reform and to ensure accountability

for all offenders properly within the juvenile court's jurisdiction. Here, petitioner seeks to eliminate section 777 as a sanction for his *most serious* probation violations (those involving criminal acts), which he committed between age 18 (when probation was last ordered) and age 21 (when juvenile court jurisdiction likely ends), *even though adult criminal prosecution is infeasible*, and, indeed, a new section 602 criminal adjudication in juvenile court is *prohibited*. Voters could not have meant to reward criminal juvenile probation violations in this manner.

Finally, a comparison of the juvenile and adult schemes after Proposition 21 amended section 777 shows that the voters knew criminal acts would no longer be formally alleged as crimes under section 777(a)(2). As suggested by the Court of Appeal, the voters made additional changes in order to *further* harmonize juvenile and adult probation violation procedures.

First, voters removed the "amounting to a crime" language that was tied, under the 1986 Act, to the prosecution's exclusive crime-charging function. By withdrawing section 777 as a means of pleading and proving substantive crimes committed on probation, Proposition 21 requires prosecutors to use another statute for this purpose, namely, section 602. The same dichotomy exists in adult court, where probation can be revoked for criminal acts. (See Pen. Code, §§ 681–685 [criminal actions], 1203.2 [probation revocation proceedings].)

Second, section 777(c) now contains the same preponderance of the evidence standard used to prove probation violations in adult revocation proceedings, including those based on criminal acts. (See Pen. Code, § 1203.2, subd. (a) (Penal Code section 1203.2(a)); *People v. Rodriguez* (1990) 51 Cal.3d 437, 439 [272 Cal.Rptr. 613, 795 P.2d 783] (*Rodriguez*).) As we discuss further below, crimes alleged in both juvenile and adult court must be proven beyond a reasonable doubt. (*Winship, supra,* 397 U.S. 358, 364, 368.) Proposition 21's more relaxed standard of proof belies any intent to continue using section 777 to allege criminal conduct in the form of substantive crimes as opposed to probation violations.

Third, voters explicitly adopted special hearsay rules applicable in "adult probation revocation hearing[s]" and alluded to a line of decisions addressing the issue. (§ 777(c), citing *Brown, supra,* 215 Cal.App.3d 452.) Under this approach, hearsay evidence that is inadmissible to prove guilt in a criminal trial may be admissible to prove an adult probation violation under certain circumstances. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 489 [33 L.Ed.2d 484, 92 S.Ct. 2593] (*Morrissey*); *Brown, supra,* 215 Cal.App.3d 452, 454–455; see, e.g., *People v. Maki* (1985) 39 Cal.3d 707, 714–717 [217 Cal.Rptr. 676, 704 P.2d 743] [allowing admission of reliable records not

subject to established hearsay exception]; *People v. Arreola* (1994) 7 Cal.4th 1144, 1156–1159 [31 Cal.Rptr.2d 631, 875 P.2d 736] [disallowing admission of court transcript absent good cause to forgo live testimony].) As with the standard of proof, Proposition 21's new hearsay rule departs from Evidence Code requirements for proving crimes alleged as such in section 602 jurisdictional hearings and criminal trials. Voters obviously intended that the treatment of a juvenile probationer's new misconduct, even if inherently criminal, as a mere probation violation under section 777 should parallel the treatment of similar new misconduct under the adult probationary scheme.

■ In sum, by limiting section 777(a)(2) to matters "not amounting to . . . crime[s]," Proposition 21 only affected the manner in which such violations are officially treated under the statute. Section 777(a)(2) covers all probation violations alleged as such, including those that are criminal in fact. The Court of Appeal therefore did not err in affirming the order modifying petitioner's disposition based on the probation violations alleged and sustained in juvenile court. We disapprove *In re Marcus A, supra,* 91 Cal.App.4th 423, to the extent it reaches a contrary result.[14]

B. *Validity of Section 777.*

Petitioner argues here, as below, that Proposition 21 violates federal and state due process guarantees by allowing probation violations to be proven by a preponderance of the evidence. (§ 777(c).) Even though substantive crimes can no longer be alleged as such under section 777, petitioner finds such proceedings indistinguishable from section 602 proceedings in juvenile court and from criminal trials in adult court. Petitioner claims that because probation violations may involve criminal conduct, and because section 777 inflicts punishment, the facts must be proven beyond a reasonable doubt. Much like the Court of Appeal, we reject the claim.

No United States Supreme Court case, including *Winship, supra,* 397 U.S. 358, compels or supports the result petitioner seeks. In *Winship,* officials invoked New York's juvenile delinquency scheme against a 12-year-old boy. The relevant statute literally covered any act that would constitute a " 'crime' " if done by an adult. (*Id.* at p. 359.) The petition alleged that the minor had committed " 'the crime or crimes of Larceny' " by entering a

---

[14] Of course, nothing we say here is intended to preclude use of the same conduct, if actually criminal, as the basis for both a section 777 probation violation proceeding, and either a section 602 proceeding or an adult criminal prosecution, or to suggest that prosecuting authorities must make an election between probation revocation and a new criminal adjudication in such cases. (Cf. Pen. Code, § 1203.2(a) [allowing revocation of adult probation "regardless whether [the person] has been prosecuted for such offenses"].) That question is not raised or decided in the present case.

locker and stealing cash from someone's purse. (*Id.* at p. 360.) At the jurisdictional phase, the juvenile court sustained the theft charge under a state statute allowing proof by a preponderance of the evidence. The court also rejected the minor's claim that only the reasonable doubt standard could constitutionally apply. At the dispositional phase, the minor was committed to a training school for 18 months, subject to annual extensions until age 18. The judgment was affirmed on appeal in state court. (*Ibid.*)

The high court reversed in a two-part decision that accepted the minor's federal constitutional claim. First, *Winship* reaffirmed that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*Winship, supra*, 397 U.S. 358, 364.) According to the court, unique and invaluable interests are at stake when someone is formally charged with a crime. Defendants stand to lose their liberty if convicted, and to suffer the social stigma that only criminal conviction can bring. (*Id.* at p. 363.) The reasonable doubt standard, like the presumption of innocence, was essential in the court's view to protect innocent persons from erroneous findings of guilt. (*Ibid.*) By reducing the risk of such factual error, *Winship* also sought to buttress community confidence in the "moral force of the criminal law." (*Id.* at p. 364.)

Second, *Winship* determined that the same interests apply, and the same need for accurate factfinding exists, where a juvenile is accused of a crime in juvenile court. The high court invoked *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], which adopted other due process safeguards in criminal delinquency cases, and which rejected any notion that they differed " 'in seriousness' " from adult criminal prosecutions. (*Winship, supra*, 397 U.S. 358, 366.) *Winship* observed that, like a defendant convicted in criminal court, a juvenile offender is subject to "the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement" as the result of such finding. (*Id.* at p. 367, fn. omitted.) Hence, the court held that the reasonable doubt standard is as essential at the adjudicatory stage of a criminal delinquency proceeding as the other safeguards applied in *In re Gault, supra*, 387 U.S. at pages 31–57—notice of the charges, the right to counsel, the rights of confrontation and examination, and the privilege against self-incrimination. (*Winship, supra*, 397 U.S. 358, 368 [25 L.Ed.2d 368, 90 S.Ct. 1068].)

■ *Winship* thus stands for the seminal proposition that juveniles, like adults, are entitled to proof beyond a reasonable doubt of all the elements of an alleged crime. This due process rule applies at the adjudicatory stage of a delinquency proceeding in which the state "charge[s]" the juvenile with an act that would result in criminal conviction "if committed by an adult."

(*Winship, supra,* 397 U.S. 358, 359, fn. omitted.) Nothing in *Winship* extends the same rarified standard of proof to either juvenile or adult proceedings involving allegations, interests, and consequences different from those at stake when a crime is alleged as such.

■ Indeed, it is well settled in the adult context that an alleged probation violation—even one involving criminal conduct *in fact*—does *not* trigger the reasonable doubt standard where the state seeks to use the violation only to modify or terminate probation or parole for a prior criminal conviction. The United States Supreme Court established this principle shortly after *Winship, supra,* 397 U.S. 358, when it announced the minimum safeguards due upon revocation for both adult parolees (*Morrissey, supra,* 408 U.S. 471), and probationers (*Gagnon v. Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756] (*Scarpelli*)). We summarize these two cases here.

The premise of *Morrissey, supra,* 408 U.S. 471, which was followed in *Scarpelli, supra,* 411 U.S. 778, 782, is that criminal prosecutions and revocation proceedings are constitutionally distinct. The high court observed that parole and probation conditions pressure the person to reform and allow the supervising officer to monitor compliance. (*Morrissey, supra,* 408 U.S. at p. 478.) The court also recognized that parole and probation violations often involve the commission of "another crime." (*Id.* at p. 479.) The court made clear, however, that revocation proceedings, in and of themselves, do not concern guilt of any criminal charges, or risk any increase in the maximum terms of confinement to which persons are exposed by virtue of their underlying convictions. (*Morrissey, supra,* 408 U.S. at p. 480; *Scarpelli, supra,* 411 U.S. at p. 781.) The narrow inquiry is whether conditional release has been violated, and whether parole or probation should be terminated as a result. (*Morrissey, supra,* 408 U.S. at pp. 479–480.) Given these distinctions between criminal and revocation proceedings, the court found no constitutional basis on which to afford parolees and probationers "the full panoply of rights" available in criminal trials. (*Morrissey, supra,* 408 U.S. at p. 480; accord, *Scarpelli, supra,* 411 U.S. at pp. 788–789.)

In deciding what lesser process is due at an adult revocation hearing, the high court balanced the competing concerns. On the one hand, parolees and probationers possess a liberty interest which—though diminished by the terms of conditional release—deserves "some orderly process, however informal." (*Morrissey, supra,* 408 U.S. 471, 482.) On the other hand, because parole and probation violators often pose a threat to the public, the state has an "overwhelming interest" in imprisoning them "without the burden of a new adversary criminal trial." (*Id.* at p. 483.) *Morrissey* at pages 488–489, and *Scarpelli, supra,* 411 U.S. 778, 790–791, specify the procedures that must be followed when parole or probation is terminated. Absent from the list

is any requirement that the facts be proven either beyond a reasonable doubt or by any other heightened standard of proof.[15]

This court followed suit in *Rodriguez, supra,* 51 Cal.3d 437. Specifically, *Rodriguez* held that adult probation can be revoked under a standard of proof no more demanding than that used in an ordinary civil case. We found no due process basis for either a heightened reasonable doubt standard or an intermediate clear and convincing evidence standard. Thus, *Rodriguez* upheld Penal Code section 1203.2(a) insofar as it permits revocation where a probation violation is proved by a preponderance of the evidence. (51 Cal.3d at pp. 441–442.)

In reaching this result, *Rodriguez, supra,* 51 Cal.3d 437, 441, implicitly distinguished *Winship, supra,* 397 U.S. 358, and followed *Morrissey, supra,* 408 U.S. 471, and *Scarpelli, supra,* 411 U.S. 778. We agreed with the latter cases that revocation deprives an adult probationer " 'only of the conditional liberty properly dependent on observance of special [ ] restrictions.' " (*Rodriguez, supra,* 51 Cal.3d at p. 442.) We also observed that proceedings under Penal Code section 1203.2 are not part of any " 'criminal prosecution.' " (*Rodriguez, supra,* 51 Cal.3d at p. 442.) In other words, revocation involves no criminal guilt, no criminal punishment, and no collateral consequences of a "stigmatic, permanent, or irreversible" nature. (*Id.* at p. 449 (conc. opn. of Lucas, C. J.).)

Moreover, nothing in *Rodriguez, supra,* 51 Cal.3d 437, suggested that the preponderance standard was constitutionally suspect depending upon the nature of either the offending conduct or the violated probationary term. Indeed, in upholding Penal Code section 1203.2(a), and in recognizing no exceptions to its reach, we observed that a higher standard of proof could force "overburdened trial judges to give probationers virtually a second trial of their violations," and could cause "poor-risk convicted criminals [to]

---

[15] In *Morrissey, supra,* 408 U.S. 471, 489, the court held that parolees must receive the following protections at revocation hearings: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey* further noted that the parole board is entitled to consider "letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (*Ibid.*) In addition to the *Morrissey* requirements, *Scarpelli, supra,* 411 U.S. 778, 790, held that both parolees and probationers may be entitled at the revocation hearing to appointed counsel on a limited "case-by-case" basis.

remain[ ] at large." (*Rodriguez, supra,* 51 Cal.3d at p. 446.) In sum, we found that the preponderance standard was both constitutional and supported by sound public policy.

No meaningful difference exists between section 777(c) and Penal Code section 1203.2(a) in determining whether the preponderance standard satisfies due process at a probation violation hearing. In each case, nothing akin to a criminal prosecution is involved. We reject petitioner's contrary claims, as follows:

■ Preliminarily, juvenile probation violations, like their adult counterparts, do not involve criminal guilt. While section 777 continues to permit dispositional change for probation violations involving criminal conduct, the "not amounting to a crime" limitation precludes prosecutorial use of the statute to plead and prove the violation *as* a crime. Thus, unlike criminal convictions or section 602 offenses, section 777 adjudications do not entail the "stigma of a finding that [the juvenile] violated a criminal law." (*Winship, supra,* 397 U.S. 358, 367, fn. omitted.) ■ Nor do such probation violations trigger other collateral consequences associated with convictions or section 602 adjudications. (See, e.g., Pen. Code, § 667, subd. (d)(3) [subjecting certain violent or serious § 602 wardship adjudications to "Three Strikes" law].) Because section 777 involves no formal criminal charge, the reasonable doubt standard need not constitutionally apply.

■ In addition, section 777 does not inflict or increase criminal punishment by any appreciable due process measure. A juvenile probation violation cannot increase the maximum period of confinement for the crime *previously adjudicated under section 602*, as calculated when the ward is "removed from the physical custody of his or her parent or guardian as the result of [a section 602] order of wardship." (§ 726, subd. (c), 1st par.) This maximum period of confinement equals the "maximum term of imprisonment which could be imposed" under the DSA or other applicable sentencing provision "upon an adult convicted of the [same] offense." (*Ibid.*) As explained above, because section 777(a)(2) only governs "[probation] violation[s]" that are not "allege[d]" as crimes, proceedings under this section do not lead to a *new criminal adjudication* that might increase the maximum period of confinement. ■ Thus, as reflected by petitioner's disposition, section 777 follows the adult scheme insofar as probation violations do not trigger a term of confinement any longer than the maximum term for the underlying crime. (See Pen. Code, §§ 1203.2, subd. (c), 1203.1, subd. (a); *People v. Howard* (1997) 16 Cal.4th 1081, 1087–1088 [68 Cal.Rptr.2d 870, 946 P.2d 828].) By this measure, section 777 makes no unfavorable penal change, and the preponderance standard can apply.

Petitioner observes, however, that a new, more restrictive placement can be ordered under section 777 while the juvenile is already confined for the maximum term attributable to the prior section 602 offense. He contrasts the situation of an adult probationer in which revocation involves the *most* restrictive form of custody, state prison. He also asserts that the juvenile scheme, unlike its adult counterpart, *requires* a gradual "ramping up" of placement alternatives, from least to most restrictive, as justified by the person's behavior at earlier levels. Thus, according to petitioner, the "qualitative" dispositional changes ordered under section 777 after a juvenile violates probation are primarily punitive, are essentially mandatory, and are necessarily more restrictive than any placement the court could properly order at any earlier point in time.

 We disagree. Under section 202, juvenile proceedings are primarily "rehabilitative" (*id.*, subd. (b)), and punishment in the form of "retribution" is disallowed (*id.*, subd. (e)). Within these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. (*Id.*, subd. (e).) The voters reaffirmed these basic principles when they approved Proposition 21, including changes to section 777. (Ballot Pamp., *supra*, text of Prop. 21, p. 119.) Given these aims, and absent any contrary provision, juvenile placements need not follow any particular order under section 602 and section 777, including from the least to the most restrictive. (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396 [234 Cal.Rptr. 103]; accord, *In re Teofilio A.* (1989) 210 Cal.App.3d 571, 575–576 [258 Cal.Rptr. 540].) Nor does the court necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried. (*Ricky H., supra*, 30 Cal.3d 176, 183; *In re John H., supra*, 21 Cal.3d 18, 27.) Thus, contrary to what petitioner claims, section 777 does not mandate more restrictive placements, or permit vindictive custodial change.[16]

Petitioner insists *Arthur N., supra*, 16 Cal.3d 226, compels us to invalidate section 777(c) on due process grounds. He is mistaken.

In *Arthur N., supra*, 16 Cal.3d 226, 229–230, a section 602 ward and probationer was placed in CYA for a robbery alleged and sustained under

---

[16] It bears emphasis that former section 502—the predecessor to section 202—stated an explicit preference for juvenile court treatment "in [the minor's] own home." (Former § 502, repealed by Stats. 1976, ch. 1068, §§ 1.5, 14, pp. 4741, 4781; see *In re Aline D.* (1975) 14 Cal.3d 557, 562 [121 Cal.Rptr. 816, 536 P.2d 65].) Given this priority, which has since been removed from the statutory scheme, it was understood that persons within the juvenile court's jurisdiction under section 602 would receive the most lenient disposition initially, and that more restrictive alternatives could be imposed only incrementally after less restrictive options had each been tried. In particular, CYA was considered a last resort, available " 'only after all else ha[d] failed.' " (*In re Aline D., supra*, 14 Cal.3d at p. 564.) Under this inflexible view, dispositional change was necessarily " 'punitive.' " (*Ibid.*)

section 777 in its pre-1986 form. *Arthur N.* relied on *Winship, supra,* 397 U.S. 358, and accepted the minor's claim that the juvenile court violated his due process rights by adjudicating the robbery under a standard of proof other than beyond a reasonable doubt. (*Arthur N., supra,* 16 Cal.3d at pp. 239–240.) By the same token, *Arthur N.* rejected the People's claim that a juvenile probation violation proceeding is similar for due process purposes to an adult probation revocation hearing in which the reasonable doubt standard does not apply. (*Id.* at pp. 235–236.) Based on the two schemes as they *then* existed, *Arthur N.* noted that, unlike the sentence served when adult probation is revoked, confinement under section 777 is not "proportionate" to the crime that triggered the juvenile court's jurisdiction. (*Arthur N., supra,* 16 Cal.3d at p. 239.) *Arthur N.* also assumed that any greater restraint ordered under section 777 "exceeds" what was "permissible initially" for the prior section 602 offense. (*Arthur N., supra,* 16 Cal.3d at p. 237.)

*Arthur N., supra,* 16 Cal.3d 226, does not undermine the preponderance standard set forth in *current* section 777(c). *Arthur N.* based its reasonable doubt rule on the assumption that crimes could be pled and proven under section 777. However, Proposition 21 transformed section 777(a)(2) into a probation violation procedure in which *no* criminal offense can be alleged. Nothing in *Winship, supra,* 397 U.S. 358, compels a reasonable doubt standard under such circumstances.

Other changes in the law over the last 27 years have undermined *Arthur N.*'s distinction between juvenile and adult probation violation proceedings for standard of proof purposes. The maximum period of confinement rule in section 726 was added and refined shortly after *Arthur N.* was decided, and long before Proposition 21 amended section 777. Now, much like adult probation violations triggering confinement for a term linked to the underlying conviction, section 777 determinations do not increase the maximum period of confinement for the original section 602 offense. We also cannot assume that any new placement ordered under section 777 "exceeds" what was "permissible initially." (*Arthur N., supra,* 16 Cal.3d 226, 237.) The diverse priorities codified after *Arthur N.* was decided (see § 202), and the juvenile court's broad discretion in implementing them, defeat such a rigid, wholly punitive view of section 777 as it now exists.

Accordingly, due process does not require application of the reasonable doubt standard to proceedings alleging a probation violation "not amounting to a crime" under section 777(a)(2). The Court of Appeal did not err in rejecting petitioner's constitutional challenge to section 777(c).

## IV. DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurring.