Filed 9/19/13  In re A.L. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | H038840<br>(Santa Clara County<br>Super. Ct. No. JV39127) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.L.,<br><br>        Defendant and Appellant. | |

A.L. was adjudged a ward of the juvenile court after he admitted two counts of felony vandalism valued at over $400 (Pen. Code, § 594, subds. (a), (b)(1)), a count of felony carrying a concealed dirk or dagger (former Pen. Code, § 12020, subd. (a)(4), now § 21310), a count of possession of alcohol by a minor (Bus. & Prof. Code, § 25662), a count of possession of burglar's tools (Pen. Code, § 466), and two counts of misdemeanor vandalism (*id.* § 594, subds. (a), (b)(2)(A)).  The juvenile court initially placed A.L. on probation, subject to numerous terms and conditions.  A Welfare and Institutions Code section 777 petition was filed, alleging that A.L. violated his probation.[1] A.L. admitted the violation, and after a contested dispositional hearing, the juvenile court continued A.L. as a ward of the court and ordered him to remain on probation and

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

participate in the Pathways to Excellence, Achievement and Knowledge (PEAK) program.

A.L. appeals the order finding that he violated his probation, and the order continuing him on probation with the requirement that he participate in the PEAK program. A.L. argues that the juvenile court abused its discretion by ordering his participation in the PEAK program, that the juvenile court failed to affirmatively state on the record whether some of his admitted offenses constituted felonies or misdemeanors, and that two of his probation conditions require modification to include a knowledge requirement. For the following reasons, we modify the challenged probation conditions and remand to the juvenile court for the limited purpose of declaring on the record whether A.L.'s offenses were felonies or misdemeanors. In all other respects, the juvenile court's order is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

A.L.'s underlying crimes arise from several incidents of vandalism that occurred in Sunnyvale and San Jose. On separate occasions, A.L. was seen tagging the word "Reso" on walls, a freeway sign, street signs, and newspaper racks. After one incident, A.L. was searched by officers after he was seen tagging a sound wall in Sunnyvale, and was found to be in possession of a knife. In addition to the acts of vandalism, A.L. was once seen stealing a soda cup from a Subway restaurant. Officers searched A.L. afterwards and found him in possession of beer and a spring-loaded window punch that can be used to commit burglaries. A.L. admitted to consuming alcohol on a regular basis.

The People filed a petition pursuant to section 602 charging A.L. with numerous offenses. On June 11, 2012, A.L. admitted two counts of felony vandalism valued at over $400 (Pen. Code, § 594, subds. (a), (b)(1)), a count of felony carrying a concealed dirk or dagger (former Pen. Code, § 12020, subd. (a)(4)), a count of possession of alcohol by a minor (Bus. & Prof. Code, § 25662), a count of possession of burglar's tools (Pen. Code,

2

§ 466), and two counts of misdemeanor vandalism (*id*. § 594, subds. (a), (b)(2)(A)).  The juvenile court adjudged A.L. a ward of the court and placed him on probation subject to numerous terms and conditions, including that he participate in the Community Release Program (CRP).  A.L. was later upgraded to the electronic monitoring program (EMP) after failing to comply with the requirements of the CRP.

On August 24, 2012, the probation department filed a petition pursuant to section 777 alleging that A.L. had violated his probation.  A.L. admitted the violations.  The juvenile court then ordered that A.L. continue on probation as a ward of the court, and ordered him to attend the PEAK program.[2]  All of the juvenile court's prior orders, including the terms and conditions of probation, were to remain in effect.  A.L. appealed.

## DISCUSSION

A.L. raises three main arguments on appeal:  (1) the juvenile court abused its discretion in ordering him to attend the PEAK program, (2) the juvenile court failed to affirmatively state on the record whether several of his offenses were misdemeanors or felonies, and (3) two of his probation conditions lack a knowledge requirement.

1. **The Juvenile Court did not Abuse its Discretion in Ordering A.L. Attend the PEAK Program**

A.L. claims the juvenile court abused its discretion in ordering him to attend the PEAK program, as opposed to intensive outpatient treatment.  A.L. argues that an intensive outpatient treatment program is a less restrictive and more appropriate placement, and that therefore the juvenile court's decision to order his participation in the PEAK program was not in his best interest.

---

[2] During the September 24, 2012 hearing, the juvenile court initially ordered A.L. attend the PEAK program, but suspended its order for 60 days.  After researching the issue, the juvenile court later stated its belief that it could not suspend A.L.'s participation in the PEAK program as originally intended.  The juvenile court therefore ordered A.L. to immediately attend the PEAK program on September 25, 2012.

"A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion. [Citation.] ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' " (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330.) " 'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.' " (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.)

Section 202, subdivision (a), provides that the purpose of the juvenile court law "is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. If the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes."

"Under section 202, juvenile proceedings are primarily 'rehabilitative' [citation], and punishment in the form of 'retribution' is disallowed [citation]. Within these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. [Citation.] . . . Given these aims, and absent any contrary provision, juvenile placements need not follow any particular order under section 602 and section 777, including from the least to the most restrictive. [Citations.] Nor does the court

4

necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried." (*In re Eddie M*. (2003) 31 Cal.4th 480, 507.)

Section 725.5 directs the juvenile court in dispositional proceedings to "consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." "[T]he juvenile court must consider each individual case on its merits without a mechanized approach based solely on the seriousness of the offense and must evaluate the appropriateness of the available lesser alternative dispositions in light of the purposes of the Juvenile Court Law." (*In re Michael R*. (1977) 73 Cal.App.3d 327, 340.) While not the sole consideration (*In re Tyrone O*. (1989) 209 Cal.App.3d 145, 152), the "gravity of the offense is by statute a proper consideration at disposition." (*In re Robert H*., *supra*, 96 Cal.App.4th at p. 1330.)

In the present case, a psychological assessment ordered by the court while A.L. was detained in juvenile hall detailed that A.L. had a history of alcohol and cannabis abuse, and had problems focusing. The evaluator conducting the assessment recommended that A.L. undergo drug and alcohol counseling, and noted that A.L. was able to access alcohol even with ankle monitoring. The assessment therefore concluded that out of home placement for drug and alcohol treatment may be necessary if A.L. could not be monitored at all times at home. Additionally, the assessment noted that A.L.'s mother worked full time and his school was only a half-day, leaving him without supervision for at least part of the day.

In the probation officer's supplemental report prepared in September 2012, the probation officer noted that A.L. elected not to be screened for participation in either the "JTC Program" or the "CITA" program. The supplemental report went on to recommend that A.L. be returned home on probation, but not on additional electronic monitoring because it was "not effective in the past in curtailing his alcohol abuse and delinquent

5

behavior in general." The report recommended that A.L. participate in intensive substance abuse counseling. Both the People and A.L. were in agreement with respect to the recommendation made by probation to continue A.L. on home probation with the requirement that he participate in substance abuse counseling.

During the dispositional hearing, the court asked the testifying probation officer why the probation department made "less restrictive recommendations" in A.L.'s case given his previous history of consuming alcohol even on electronic monitoring. The probation officer answered that "with respect to APA, the program no longer exists," and that the department was now utilizing "PEAK and/or the EDGE," programs that the probation officer characterized as "geared toward minors who have been before the court multiple times for either violations of probations or new 602 petitions." Therefore, the probation officer believed that the counseling provided in these programs would potentially address issues that A.L. might not struggle with since A.L.'s main issue was with his substance abuse. However, the probation officer stated that both the PEAK and EDGE programs had substance abuse counseling on campus, and that the PEAK program starts at "9:00 a.m., possibly 8:00" and runs until around 5:00 p.m. The probation officer stated that it did not "disagree that that structure [of the program] might be beneficial," given that A.L. would be otherwise unsupervised at home in the afternoons.

Ultimately, the juvenile court concluded that it believed participation in the PEAK program would be in A.L.'s best interests, stating that: "I wanted to look at the PEAK program because it's designed for somebody like you. It has the FLY program which is a mentor program, which would help you with the lack of father figure [*sic*]. It has on-site alcohol substance abuse treatment, counseling services, and mental health services. Everything that you need. And your mom just has to take you to school, and she can pick you up after school because you get out at 5:00."

6

A.L. argues that the juvenile court's order that he participate in the PEAK program was an abuse of discretion because it was unsupported by the record, and because the program would not be in his best interest. We find this argument to be flawed. Preliminarily, we note that it is clear from the record that the probation department and the People both agreed that outpatient services would be adequate. Additionally, the record does indicate that outpatient services may have benefited A.L., as noted by the probation officer and A.L.'s attorney.

Nonetheless, contrary to A.L.'s claims, evidence supported the court's decision to order participation in the PEAK program. As the court reasoned, the court had already placed A.L. on less restrictive programs, such as the CRP. A.L. was upgraded from the CRP to the EMP after failing to comply with the requirements of the CRP. A.L. was not successful on either of these programs, and repeatedly used both alcohol and marijuana while on CRP and EMP. The psychological report stated that A.L. still managed to get alcohol while on ankle monitoring. It was also clear from the probation report, the testimony presented, and the other materials before the court that A.L.'s school was only a half-day and his mother worked full time, leaving him vulnerable in the afternoons as he would be without supervision. The probation officer testified that the structure of the PEAK program may be beneficial to A.L. Furthermore, the court stated its belief that the PEAK program's services, which included mental health services, would be beneficial to A.L.

The court was not required to accept the probation department's less restrictive recommendation regarding A.L.'s disposition, even with the People's agreement. Nor was it required to order the least restrictive placement, contrary to A.L.'s claims. (*In re Eddie M.*, *supra*, 31 Cal.4th at p. 507.) In fact, the record indicates that the court did consider less restrictive placements, such as the CRP and the EMP, but determined that these alternatives would be ineffective as A.L. already failed them in the past.

7

Since we find that substantial evidence supports the court's decision that A.L. participate in the PEAK program, we will not disturb this determination on appeal. (*In re Robert H*., *supra*, 96 Cal.App.4th at pp. 1329-1330.) We find no abuse of discretion.

2. **Remand is Necessary Under Section 702**

Next, A.L. claims that remand is necessary under section 702 for the trial court to make an express finding about whether his counts of felony vandalism (Pen. Code, § 594, subds. (a), (b)(1)) and his count of possession of a dirk or dagger (former Pen. Code, § 12020, subd. (a)(4)) are felonies or misdemeanors, as described in *In re Manzy W*. (1997) 14 Cal.4th 1199, 1204 (*Manzy W*.).

Preliminarily, the People argue that A.L. waived this argument because he never appealed the juvenile court's alleged omission when he was originally placed on probation after admitting the offenses as felonies in July 2012. A.L. argues that his claim is not forfeited because the trial court's failure to make affirmative findings is tantamount to an unauthorized sentence that may be raised on appeal at any time. We agree that the claim is not forfeited for A.L.'s lack of objection below, and therefore proceed to the merits of his claim. (*In re Ramon M*. (2009) 178 Cal.App.4th 665, 675-676.)

Section 702 provides that in a juvenile proceeding, if a minor "is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." The importance of an explicit declaration under section 702 was explained in our Supreme Court's decision in *Manzy W*., *supra*, 14 Cal.4th 1199. Requiring a court to affirmatively declare whether an offense is a misdemeanor or a felony "facilitat[es] the determination of the limits on any present or future commitment to physical confinement for a so-called 'wobbler' offense," (*id*. at p. 1206) and also "serves the purpose of ensuring that the juvenile court is aware of, and actually exercises, its discretion under Welfare and Institutions Code section 702." (*Id*. at p. 1207.)

8

However, remand is not automatic in every case where the court fails to make a formal declaration pursuant to section 702. If the record as a whole shows that the court was aware of and exercised its discretion to determine the felony or misdemeanor nature of an offense, "remand would be merely redundant" and "failure to comply with the statute would amount to harmless error." (*Manzy W*., *supra*, 14 Cal.4th at p. 1209.)

In the present case, the People alleged in their initial juvenile wardship petition that A.L. committed the crime of vandalism in violation of Penal Code section 594, subdivision (b)(1), which the petition stated was a felony. Similarly, the petition alleged that A.L. also committed the crime of carrying a concealed dirk or dagger, in violation of former Penal Code section 12020, subdivision (a)(4), which the petition also stated was a felony. In the minute order after the dispositional hearing during which A.L. admitted the probation violation on July 2, 2012, the court completed and signed a statement that said: "The court previously sustained the following counts. Any charges which may be considered a misdemeanor or a felony for which the court has not previously specified the level of offense are now determined to be as follows: Felony," with a checkmark in the box under the "Felony" column, and no checkmark under the "Misdemeanor" column for the three challenged counts. The statement also included a listing of the non-"wobbler" offenses, with checkmarks under the "Misdemeanor" column. Furthermore, during the change of plea hearing on June 11, 2012, the court asked if A.L. was admitting the allegations that he "violated Penal Code section 594, [subdivisions (a), (b)(1)], a felony, for vandalism" and that he "violated Penal Code section 12020, [subdivision] (a)(4), a felony, carrying a dirk or dagger concealed on a person."

The court's intent to treat the challenged counts as felonies is clear from the face of the record. However, minute orders are insufficient "to show that the court made the decision and finding required by section 702." (*In re Ricky H*. (1981) 30 Cal.3d 176, 191; *In re Ramon M*., *supra*, 178 Cal.App.4th at pp. 675-676.) Furthermore, none of the

9

court's oral statements during the relevant hearings demonstrated that it *considered* whether the counts would be treated as misdemeanors or felonies, and the court did not expressly declare its *determination* in this regard. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) The record reflects that the juvenile court was aware that A.L. was charged with and admitted to felonies. However, the reiteration of the court that the offenses were "felonies" as charged in the section 602 petition is not indicative that the juvenile court was aware of its discretion to treat the offenses in question as felonies instead of misdemeanors.

Lastly, the People argue that the decision in *Manzy W.* is inapplicable because unlike *Manzy W.*, this case involved a negotiated disposition. However, we find this contention to be without merit. The minor in *Manzy W.*, like A.L. here, also admitted allegations in the petition filed against him as true in return for dismissal of other allegations. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1203.)

Accordingly, we find that remand is necessary for the limited purpose of the court making an express declaration as to whether the offenses will be treated as felonies or misdemeanors.

3. **Challenged Probation Conditions Must be Modified**

Lastly, A.L. argues that the probation conditions prohibiting his possession of drug paraphernalia and prohibiting his possession or use of graffiti-related materials are unconstitutionally vague and must be modified to include a knowledge requirement. The People concede this issue, and we find that the concession is appropriate. Indeed, the California Supreme Court has concluded that in many cases "an explicit knowledge requirement is necessary to render [a] condition constitutional." (*In re Sheena K.* (2007) 40 Cal.4th 875, 892.) We therefore modify both conditions to include an explicit knowledge requirement.

**DISPOSITION**

The juvenile court's order is affirmed, and the matter is remanded with directions for the court to state on the record its intent to treat the offenses noted above as felonies or misdemeanors in compliance with Welfare and Institutions Code section 702. We further order probation condition Nos. 8 and 15 modified as follows:

Condition No. 8: "That said minor not knowingly be in possession of any drug paraphernalia."

Condition No. 15: "That said minor not knowingly use or possess any graffiti-related materials or knowingly engage in any illegal graffiti-related activity."


_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Elia, J.

11