Filed 1/14/16  In re Y.V. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Y.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>Y.V.,<br><br>        Defendant and Appellant. | A142355<br><br>(City & County of San Francisco Super. Ct. No. JW 14-6087) |

Defendant Y.V., who was born in Honduras in 1996, entered the United States in 2013 as an unaccompanied minor.  He appeals a dispositional order placing him on probation and ordering that he be released to Immigration and Customs Enforcement (ICE).  We agree with Y.V. that the juvenile court incorrectly concluded it lacked discretion to consider other dispositions.  We will reverse the dispositional order.

## I.  BACKGROUND

A juvenile wardship petition (Welf. & Inst. Code,[1] § 602) filed on April 3, 2014 alleged that Y.V. sold a controlled substance on April 1, 2014 (Health & Saf. Code, § 11352, subd. (a)).  The juvenile court ordered Y.V. detained.  On April 25, 2014, the court, on the district attorney's motion, amended the petition to allege Y.V. possessed a

_____
[1] All undesignated statutory references are to the Welfare and Institutions Code.

controlled substance (Health & Saf. Code, § 11377, subd. (a)), and Y.V. admitted the allegation.

Prior to the disposition hearing, the probation department submitted a report recommending that the court declare Y.V. a ward, commit him to juvenile hall for the time he had served, and then release him to the custody of ICE. The probation department stated Y.V. entered the United States "without legal documents" and was detained in June 2013 by ICE, which released him pending immigration proceedings. After his arrest in San Francisco on April 1, 2014, Y.V. was initially booked as an adult but was then transferred to the juvenile justice center. The probation report states: "An Immigration Detainer from the Department of Homeland Security, dated April 2, 2014, accompanied the file," and, "[o]n April 18, 2014, ICE was notified of the youth's change in institutions."[2]

The probation department stated that, based on Y.V.'s prior detention by federal immigration authorities, ICE "has federal jurisdiction" over him. The department believed that Y.V. was a flight risk, that it was in his best interest to be reunited with his family in Honduras, and that any disposition that involved " 'placing' " him would violate federal law.

Y.V. filed an alternative disposition memorandum, requesting that the court (1) place him on nonwardship probation (§ 725, subd. (a)) and order him placed in foster care, or, alternatively, (2) declare him a ward and place him in the custody of the probation department for out-of-home placement.

At the contested disposition hearing on June 19, 2014, the court, consistent with the probation department's recommendation, declared Y.V. a ward of the court and placed him on probation with the condition that he serve 84 days in juvenile hall (of

---

[2] The immigration detainer issued for Y.V. is not in the record on appeal. A detainer typically requests state or local officials to maintain custody of a person for a period not to exceed 48 hours beyond the time when he or she would otherwise be released to allow federal officials to take custody of him or her. (See 8 C.F.R. § 287.7(d) (2015); *In re Christian H.* (2015) 238 Cal.App.4th 1085, 1087 (*Christian H.*); *Galarza v. Szalczyk* (3rd Cir. 2014) 745 F.3d 634, 639–640 (*Galarza*).)

which he had already served 80 days). The court ordered that Y.V. be released to ICE on June 23, 2014, and that, if he is deported, he is not to return to the United States without proper documentation. The court imposed probation conditions that would apply if Y.V. is released from custody. At the request of Y.V.'s counsel, the court made the findings necessary to enable Y.V. to petition the United States Citizenship and Immigration Service for classification as a special immigrant juvenile (SIJ).[3]

Y.V. appealed the dispositional order.[4]

## II. DISCUSSION

Y.V. contends the court failed to exercise its discretion to select an appropriate disposition because it erroneously concluded it lacked any such discretion. We agree.

As noted, the probation department believed any disposition that involved placing Y.V. would violate federal law. The trial court similarly concluded that any placement order would violate federal law and that it lacked discretion to order any disposition other than the transfer of Y.V. into ICE custody. The court stated, "I don't believe that I have

---

[3] " 'The Immigration Act of 1990, codified at [title 8 United States Code] section 1101, sets forth a procedure for classification of certain aliens as special immigrants who have been declared dependent "on a juvenile court." ' [Citation.] 'Congress created this classification to protect abused, neglected, and abandoned unaccompanied minors through a process that allows them to become permanent legal residents.' " (*In re Israel O.* (2015) 233 Cal.App.4th 279, 283 (*Israel O.*).) The Code of Civil Procedure authorizes a juvenile court to "make the findings necessary to enable a child to petition the United States Citizenship and Immigration Service for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code." (Code Civ. Proc., § 155, subd. (a); see *Christian H., supra,* 238 Cal.App.4th at p. 1089, fn. 1.) The predicate state court findings now required under the SIJ statute are that "(1) the minor is 'dependent' upon a juvenile court or 'committed to, or placed under the custody of,' a state entity or other court-appointed individual or entity; (2) the minor cannot be reunified with one or both parents 'due to abuse, neglect, abandonment or a similar basis found under State law'; and (3) it is not in the minor's 'best interest' to be 'returned' to his or her country of origin. ([8 U.S.C.] § 1101(a)(27)(J); see 8 C.F.R. § 204.11(c) (2014).)" (*Israel O., supra,* 233 Cal.App.4th at p. 284.)

[4] Amicus curiae Youth Law Center states in its brief that Y.V. was transferred to ICE, which subsequently released him. Y.V.'s appellate brief states that Y.V. has not been deported.

3

any choice here but to allow Probation . . . to release [Y.V.] to the federal authorities.  My hands are tied."

On appeal, the parties agree that the court misunderstood the scope of its discretion, and the Attorney General does not object to "a remand for a proper exercise of discretion."  Y.V.'s immigration status and the immigration detainer issued by ICE did not require the court to order that Y.V. be turned over to ICE.  As our colleagues in Division Three explained recently in *Christian H.*, "A juvenile court's compliance with an immigration detainer is discretionary, subject to the limitations found in Government Code section 7282.5 and applicable local ordinances."[5]  (*Christian H., supra,* 238 Cal.App.4th at p. 1092, citing *Galarza, supra,* 745 F.3d at pp. 639–646; Gov. Code, § 7282.)  "Federal law does not restrict the court's discretion in selecting an appropriate disposition for the minor."  (*Christian H., supra,* at p. 1092.)

As Division Three further explained in *Christian H.*, "The court's discretion in selecting an appropriate disposition for a ward is governed by Welfare and Institutions Code section 202, subdivision (b), which provides, 'Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the

---

[5] Government Code section 7282.5 provides:  "(a) A law enforcement official shall have discretion to cooperate with federal immigration officials by detaining an individual on the basis of an immigration hold after that individual becomes eligible for release from custody only if the continued detention of the individual on the basis of the immigration hold would not violate any federal, state, or local law, or any local policy, and only under [enumerated] circumstances[.]  [¶] . . . [¶] (b) If none of the conditions listed in subdivision (a) is satisfied, an individual shall not be detained on the basis of an immigration hold after the individual becomes eligible for release from custody."  San Francisco Administrative Code section 12I.3 provides in relevant part:  "(a) Except as provided in subsection (b), a law enforcement official shall not detain an individual on the basis of a civil immigration detainer after that individual becomes eligible for release from custody. [¶] (b) Law enforcement officials may continue to detain an individual in response to a civil immigration detainer for up to forty-eight (48) hours after that individual becomes eligible for release if the individual meets [enumerated] criteria[.]"  While Y.V. argues his adjudication does not qualify as one of the enumerated conditions under the Government Code, we need not consider this issue because the record does not show that Y.V. was detained beyond the date on which he was eligible for release.  (See *Christian H., supra,* 238 Cal.App.4th at p. 1092, fn. 6.)

4

interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter. . . .' Furthermore, 'Under section 202, juvenile proceedings are primarily "rehabilitative" [citation], and punishment in the form of "retribution" is disallowed [citation]. Within these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public.' (*In re Eddie M*. (2003) 31 Cal.4th 480, 507.)" (*Christian H., supra,* 238 Cal.App.4th at pp. 1092–1093.)

We note that, under section 738, a court may order a nonresident juvenile offender returned to his or her parents who reside in a foreign country if the court determines that such a placement would be in the minor's best interest.[6] (§ 738; *Christian H., supra,* 238 Cal.App.4th at p. 1093 & fn. 7; *In re Manuel P.* (1989) 215 Cal.App.3d 48, 63 [interpreting § 738 "as allowing courts to order such minors released to federal immigration authorities for deportation by the federal government"].) Accordingly, before the court made the predicate findings for SIJ status, an order that Y.V. be released to ICE for deportation to Honduras was among the options the court could consider in exercising its dispositional discretion.

In the circumstances of this case, however, the court's dispositional order was an abuse of discretion. First, the court did not exercise discretion. Instead, as noted, the

---

[6] Section 738 provides in relevant part: "In a case where the residence . . . of a ward of the juvenile court is out of the state and in another state or foreign country, or in a case where such minor is a resident of this state but his parents, relatives, guardian, or person charged with his custody is in another state, the court may order such minor sent to his parents, relatives, or guardian, or to the person charged with his custody, or, if the minor is a resident of a foreign country, to an official of a juvenile court of such foreign country or an agency of such country authorized to accept the minor, and in such case may order transportation and accommodation furnished, with or without an attendant, as the court deems necessary. If the court deems an attendant necessary, the court may order the probation officer or other suitable person to serve as such attendant."

court incorrectly believed it was compelled to release Y.V. to federal authorities and could not consider other potential dispositions.

Second, and in any event, in its order making the predicate factual findings for Y.V. to petition for SIJ status, the court expressly determined that it was not in Y.V.'s best interest to return to Honduras. The court's order attaches a declaration (from a social worker/youth advocate in the public defender's office) setting forth facts that support the court's findings. The declaration explains, among other things, that (according to Y.V.'s mother) Y.V.'s "biological father abandoned him at birth; he did not recognize or take responsibility for him from birth and [Y.V.] has never known his father." When Y.V. was one year old, his mother married his stepfather, and Y.V. was left with his maternal grandparents. Y.V.'s mother was never able to provide any financial assistance to her parents to raise Y.V.; she had little contact with Y.V. (because her husband wanted her to focus on their relationship and their children); and she has no ability to provide for Y.V. The stepfather has never provided economic support for Y.V. and believes he has no obligation to him. Due to their age and declining health, Y.V.'s grandparents can no longer provide for his basic needs. In light of these findings, the court could not also make the required finding under section 202 that ordering Y.V. to return to Honduras would be in his best interest. (*Christian H., supra,* 238 Cal.App.4th at p. 1093.)

We recognize that events occurring since the original disposition may have rendered moot the question of the appropriate disposition for Y.V., who is now 19 years old and whose status and whereabouts are not clear from the record. On remand, the juvenile court shall consider in the first instance whether Y.V.'s age or any events occurring since the original disposition have rendered this case moot or have made infeasible some of the dispositional options that originally were available to the court. At oral argument, the Attorney General stated that Y.V.'s wardship had terminated and noted that Y.V. is now 19 and one-half years old. In the circumstances of the present case, these facts might but do not necessarily establish mootness. If the juvenile court had understood the scope of its discretion at the disposition hearing in June 2014 (when Y.V. was 17 years old), it might have selected a different dispositional option, potentially

6

one that would have made Y.V. eligible for services or benefits extending until age 21. (See, e.g., §§ 725, 727, subd. (a), 11400, subds. (v), (aa).)  And a juvenile court generally may retain jurisdiction over a dependent or ward until he or she attains 21 years of age. (§§ 303, subd. (a), 607, subd. (a).)  The fact that the wardship imposed by the juvenile court (as part of its erroneous original disposition) has terminated does not preclude the court from considering, on remand, whether a different disposition may still be appropriate.

If the court determines the case is not moot, the court shall select a disposition that serves the purposes of the juvenile court law.[7]  (*Christian H., supra,* 238 Cal.App.4th at p. 1093.)

## III.  DISPOSITION

The dispositional order is reversed and remanded.

---

[7] Because we reverse the dispositional order on the grounds discussed in the text, we do not address (1) Y.V.'s argument that the order was improper on the additional ground that it resulted in the release of confidential information to ICE, or (2) amicus curiae Youth Law Center's related argument that the probation department violated confidentiality protections by notifying ICE that Y.V. was in custody.

 

                    _____

                    Streeter, J.

We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.


A142355/*In re Y.V.*