Filed 12/21/21  In re A.R. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.R.,<br><br>    Defendant and Appellant. | A162909<br><br>(Contra Costa County<br>Super. Ct. No. J21-00230) |

Alexis R. (Minor) appeals from a disposition order committing him to the Orin Allen Youth Rehabilitation Facility (Orin Allen) after he admitted that he possessed a weapon on school grounds (Welf. & Inst. Code, § 602, subd. (a)).[1]  He contends:  (1) the juvenile court abused its discretion by ordering his placement at Orin Allen; and (2) the court failed to specify his maximum period of physical confinement as required under section 726, subdivision (d)(1).  We conclude the court did not abuse its discretion in the commitment, but will remand the matter for the court to determine the maximum term of confinement.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

Minor and his brother got into a verbal argument with a group of students at their high school and physical fighting broke out though it remains unclear who started it. During the altercation, the victim slammed Minor's brother to the ground and was punching and kicking him when Minor stabbed the victim once in his back. Minor immediately fled and tried to dispose of the knife, which the police later found. The knife had a two- to three-inch blade. The victim survived but suffered a punctured right lung, which required six staples. Eventually, the wound became infected, preventing the victim from playing sports and causing him to feel depressed.

The People filed a wardship petition pursuant to section 602, subdivision (a), charging Minor with felony possession of a weapon (a knife) on school grounds (Pen. Code, § 626.10, subd. (a)). Minor pled no contest to the count.

In advance of the disposition hearing, the probation officer authored a report detailing the circumstances of the incident and Minor's interview with the probation officer. Minor said he "always" carries a knife and claimed he stabbed the victim to stop him from hurting his brother, not to kill. Minor reported he had ongoing issues with the other group of students, some of whom " 'jumped' " him the year prior.

The probation report detailed various concerns about Minor, including concern for his academic performance. Specifically, Minor—a 17-year-old in the tenth grade—failed almost all his high school classes, earned only 15 out of 205 credits needed to graduate, and was absent from school nearly 20

percent of the time.[2]  Minor had been suspended six times, of which three were related to fighting and one was for possessing a vape "pen" and a knife. The report also related concerns about substance abuse, i.e., Minor reported he smoked marijuana twice a day for about a year, which drew parental scolding but never punishment.  Per the report, Minor had a good relationship with his family.  Minor's parents reported being "shocked" by Minor's actions, describing Minor as "nice, quiet, and well behaved."

The probation report also indicated Minor was assessed using the "Ohio Youth Assessment System" (OYAS) in order to "identify the youth's underlying motivation for delinquent behavior" and to target his specific needs.  OYAS indicated low concern based on Minor's juvenile justice history; peer and social support network; and values, beliefs and attitudes.  But there was moderate concern based on his family and living arrangements; education and employment; and substance abuse, mental health, and personality.  Moreover, there was a high concern based on his pro-social skills.  Overall, under OYAS, Minor was deemed a low risk of re-offense.

Ultimately, the probation report recommended the juvenile court commit Minor to Orin Allen for nine months, plus 180 days of aftercare.  In the probation officer's assessment, Minor's actions were impulsive and dangerous:  he brought a knife onto school grounds and lacked the ability to foresee the consequences of his actions.  Minor did not seem genuinely remorseful and could not explain how his actions impacted the victim. Minor's academic performance was of great concern.  The probation officer believed Minor must be held accountable while receiving services to address

---

[2]     Minor has an "individualized education program" (IEP).  Per the probation report, "[Minor's] IEP indicated his Primary Disability is a Specific Learning Disability, due to deficits in auditory and visual memory."

3

his issues, and Minor would also benefit from a more structured academic setting and from substance abuse counseling and programs at Orin Allen.

At the disposition hearing, Minor requested that he be released into his parents' custody on an ankle monitor with any terms the court believed were appropriate. Among other things, Minor alleged the People made a decision to charge him with weapon possession rather than an assaultive offense, because there were facts showing he acted in defense of his younger brother.[3] Minor noted his OYAS score, his supportive family, and the circumstance that he had never received services before. The probation officer opposed release on home supervision, indicating it was not in Minor's best interest. The People agreed with probation.

The juvenile court adjudged Minor a ward without specifying a termination date and adopted various of the recommendations in the probation report, including committing Minor to Orin Allen for a nine-month regular program with 180 days of aftercare. The court explained in detail the various factors underlying its decision to commit Minor to Orin Allen.

## DISCUSSION

### A. The Camp Commitment

Minor contends the juvenile court abused its discretion in ordering him committed to Orin Allen because there was no reason to believe that removal from his parents' custody was necessary to serve the purposes of juvenile court law, i.e., to hold him accountable for his conduct, protect public safety, redress the victims' injuries, and serve Minor's best interests. We are unpersuaded.

---

[3] The prosecutor neither confirmed nor denied this, stating: "I'm not here to articulate to the Court or anybody else the reasons why we make the filing decisions that we make."

4

The purpose of juvenile court law "is to provide for the protection and safety of the public and each minor . . . and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public." (§ 202, subd. (a).) "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (*Id.*, subd. (b).)

"[T]he court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) "[J]uvenile placements need not follow any particular order under section 602 . . . , including from the least to the most restrictive. [Citations.] Nor does the court necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried." (*Ibid.*)

A juvenile court may remove a minor who has been adjudged a ward from the physical custody of a parent if, after a hearing, it finds "the welfare of the minor requires that custody be taken from the minor's parent or guardian." (§ 726, subd. (a)(3).) In determining the judgment and order to be made, a court must consider "in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) Courts should also consider "the safety and protection of the public, the importance of redressing injuries to victims, and the best

5

interests of the minor in all deliberations." (§ 202, subd. (d).) Additionally, courts must "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him [or her] adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329 (*Robert H.*).) When making disposition orders, the court is free to evaluate credibility, weigh evidence, and accept or reject the recommendations of the probation officer. (*Ibid.*)

"A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion. [Citation.] ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' " (*Robert H.*, *supra*, 96 Cal.App.4th at pp. 1329–1330.)

Here, the juvenile court explained it was formulating the disposition to maximize Minor's opportunity at rehabilitation, while bearing public safety in mind. The court went on to discuss, at length, its reasons for declining Minor's request for home supervision and for ordering his commitment to Orin Allen. First, the court observed the underlying conduct was "extremely dangerous and violent." Indeed, there was no dispute that Minor brought a knife to school and stabbed the victim in the back with it—a potentially fatal act. While the victim survived, he suffered ongoing injury that impacted his life.

Beyond the gravity of the offense, the juvenile court also discussed Minor's poor academic performance and his school disciplinary record. With regard to his disciplinary history, the court noted three of Minor's six suspensions were related to fighting, and one was for carrying a knife on campus, which was conduct similar to what precipitated the underlying incident. The court further observed that Minor has issues with marijuana abuse. Moreover, the court did not "find much indication of sincere remorse

in [Minor's] statements in the probation report," and believed it was important that Minor be separated from the people he fought with during the underlying incident.

With regard to Minor's family, the juvenile court observed the parents' supervision had not been adequate to prevent the underlying incident, despite their best efforts. Indeed, the probation report supplied ample grounds to be skeptical that Minor's parents could adequately supervise him, as they showed little awareness of his issues and needs.[4]

In addition to the foregoing, the juvenile court observed the probation report indicated that Orin Allen could offer Minor behavioral, substance abuse, and educational programming, all of which both Orin Allen and the probation department believed would be beneficial to Minor.

Based on the evidence before it, the juvenile court reasonably concluded that a commitment to Orin Allen would best protect Minor and provide him care, treatment, and guidance, while also holding him accountable and protecting the public from further schoolyard violence.

In disputing the juvenile court's order, Minor argues there was no evidence that a custodial commitment was necessary to protect the public or that he posed a danger to public safety. He claims he only brought the knife to school to protect himself, and only used it to protect his brother who was

---

[4]     As recounted, the probation report showed that the parents described Minor as nice, quiet and well behaved, and said they were shocked by his conduct. This contrasted with other facts in the report, such as Minor's poor school disciplinary record (which included him being disrespectful toward staff), and his marijuana abuse. Minor told the probation department that his parents disapproved of his smoking marijuana, but never issued consequences.

being "brutally beaten."[5]  This is unconvincing.  Regardless of his insistence that he stabbed the victim to defend his brother—which seems somewhat contradicted by Minor's own acknowledgement that he could have "gone to the office" for help instead of engaging in the fight—the evidence at the hearing still established that he brought a knife to school more than once; fought with others more than once; and ultimately stabbed someone impulsively with a knife during his latest fight, causing serious injury.  Thereafter, Minor did not express genuine remorse; he could not even explain how he believed his actions affected the victim.  Thus, there is substantial evidence that Minor posed a danger to the public.

Minor claims his OYAS score did not support the conclusion he posed a danger to public safety.  This claim is unavailing.  While acknowledging OYAS was a valuable tool, the juvenile court determined that Minor's "conduct is so dangerous and so violent that it is not appropriate to address it through home supervision" and that home supervision would not "protect the community or provide [Minor] with the resources he needs."  It was the court's prerogative to weigh the evidence before it.  (*Robert H.*, *supra*, 96 Cal.App.4th at p. 1329.)  We do not reweigh evidence on review.

Additionally, Minor argues there was no evidence that a custodial commitment was necessary to protect the public because he was not charged with stabbing, but only with possessing a weapon.  The fact that the prosecution did not charge Minor with a more serious crime is of no moment.  Initially, we note there is no evidence explaining the prosecution's charging decision, leaving only speculation as to why Minor was charged as he was.  Regardless, the juvenile court knew of and considered the circumstances and

---

[5]     The probation report, however, indicated Minor's brother suffered no injuries requiring medical treatment as a result of the fight.

gravity of the offense. (§ 725.5; *Robert H.*, *supra*, 96 Cal.App.4th at pp. 1320, 1329 [court properly considered the fact that the minor fired a gun at someone and fortuitously missed, even though the minor only admitted to a charge of possession of a firearm].) The circumstances of the offense amply support the conclusion that Minor is impulsive, prone to violence, and lacking in genuine remorse or any deeper understanding of his actions, which in turn supports the conclusion that Minor posed a danger to the public.[6]

Next, Minor contends a custodial commitment was unnecessary to hold him accountable. In his view, he had already been held accountable since he spent a month at Juvenile Hall where he behaved himself; he cooperated with the probation officer who interviewed him; and he had been ordered as part of his disposition to write an apology letter to the victim. Relatedly and for the same reasons, Minor claims a custodial commitment was unnecessary to redress injuries to the victims. These contentions are unpersuasive. The probation report indicates Minor did not appear to have genuine remorse for stabbing the victim. Minor said he " 'felt bad' " but could not explain why, stating he "felt bad for his 'brother and the victim, I guess.' " Notably, Minor could not explain how he thought his actions affected the victim. Additionally, the victim and his legal guardian made statements about the harm Minor's actions caused to their family and asked the court to commit Minor for 12 months rather than nine. All this amply supports the conclusion that commitment was either necessary or optimal to hold him

---

[6] With regard to his argument about whether he posed a risk to public safety, Minor goes on to assert that he agrees there was a need to separate him from those he had been fighting with, but there were less restrictive means available. That may be, but the court here had "broad discretion to choose probation and/or various forms of custodial confinement in order to hold [Minor] accountable . . . , and to protect the public." (*In re Eddie M.*, *supra*, 31 Cal.4th at p. 507.)

accountable and redress the harm he inflicted on the victim and the victim's family.

Minor also argues a custodial commitment was unnecessary to protect his best interests because his marijuana abuse and academic problems could have been addressed by less restrictive means. But the evidence showed that Orin Allen could offer Minor specific programming aimed at his substance abuse. Orin Allen could also offer Minor "an extended year school, [*sic*] in Mt. McKinley-Bryon campus, where he could attain credits toward graduation. Additionally, he would be tested to see if he qualifies for the Read To Live program, which could also help expedite his education." Orin Allen thus had educational programming available to at least address Minor's absenteeism and deficiency in earned credits towards graduation.[7] The probation officer believed Minor would benefit from a more structured academic setting and also from Orin Allen's substance abuse counseling and programs. On this record, the court could reasonably find Minor would most benefit from programming at Orin Allen.

In sum, we conclude the juvenile court properly exercised its discretion in committing Minor to Orin Allen.

**B. Calculating the Maximum Period of Physical Confinement**

Finally, Minor contends a remand is necessary because the juvenile court failed to indicate the maximum period of physical confinement as required by section 726, subdivision (d)(1). The People concede the issue, and we accept that concession.

---

[7] The probation report contained no information about whether Orin Allen could effectively address the learning disability identified in Minor's IEP.

Section 726, subdivision (d)(1) provides:  "If the minor is removed from the physical custody of the minor's parent . . . as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court."  " 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Department of Corrections and Rehabilitation, Division of Juvenile Justice."  (§ 726, subd. (d)(5).)  The court may orally pronounce the maximum length of physical confinement or specify it in its written commitment order.  (*In re Julian R.* (2009) 47 Cal.4th 487, 497.)  Here, the court did neither, so we will remand the matter for the court to make the requisite determination.

## DISPOSITION

The matter is remanded to the juvenile court to specify the maximum term of confinement.  In all other respects, the judgment is affirmed.

11

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.


A162909/*In re A.R.*